**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **CARNELLA M. MARKS**<br>    **LA. DOC #300215**<br>**VS.**<br><br>**WAYNE EDWARDS, ET AL.** | **CIVIL ACTION NO. 3:11-cv-0114**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES**<br><br>**MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Carnella M. Marks, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 19, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). She is presently confined at the Richland Parish Detention Center, Rayville, Louisiana, but when she filed her complaint she was confined at the Bayou Dorcheat Detention Center, Minden, Louisiana. She complained about conditions and circumstances that arose during her confinement at the Louisiana Transitional Center for Women (LTCW), Tallulah, Louisiana. Plaintiff sued Wayne Edwards, the Warehouse Supervisor at LTCW, Warden Robert Rochelle, Madison Parish Sheriff Larry Cox, and Major Jenkins. Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

Plaintiff was incarcerated at the LTCW for an unspecified period of time. She was apparently

initially assigned to work in the facility's kitchen and, sometime in 2009 she obtained a Culinary Arts/ServSafe Certification. However, on some unspecified date she was terminated from kitchen duties " .... for a medical reason which would not hinder, nor prohibit her from performing any duties in a safe manner with no danger to others..." According to plaintiff, her termination violated the "American Disability Discrimination Acts."[1]

Plaintiff apparently submitted an Administrative Remedies Procedure (ARP) grievance and Major Jenkins conducted an investigation. Plaintiff was interviewed by Nurse Newton on December 15, 2009 and by Major Jenkins on January 15, 2010. On January 20, 2010 Jenkins informed plaintiff that she would be employed at the warehouse because there were no kitchen jobs available at that time. (Nevertheless, according to plaintiff, another inmate received a kitchen assignment three weeks later.)

Plaintiff complained that she "... was subjected to racial discrimination and remarks, harrassed (sic), sexual misconduct and verbal abuse from [her] supervisor, Mr. Wayne Edwards." According to plaintiff, Edwards referred to her as "'Ceely' a Black character in the movie 'The Color Purple' who was a slave." Edwards also made derogatory remarks about plaintiff's physique and slapped her buttocks.

Plaintiff complained to Sgt. Vickie Jones who, in turn, notified Major Jenkins. On August 5, 2010 Jenkins interviewed plaintiff and plaintiff requested another prison job. Plaintiff's request to speak to the Warden was ignored.

Plaintiff filed ARP grievances with the LDOC but received no reply; she suspects that her

---

[1] Presumably, plaintiff is referring to the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq*.

2

outgoing mail was intercepted. She was also informed that LDOC responded to one of her complaints in February 2010; however, she did not receive the response.

Plaintiff remained under the supervision of defendant Edwards from August 5, 2010-September 10, 2010 and was assigned various duties. When she inquired about intake and receiving items Edwards "yelled" at her and threatened to terminate her employment should she perform any job assignments without first checking with him.  When Edwards became aware of plaintiff's complaint, he had her co-workers assigned to do manual labor instead of assigning all manual labor to plaintiff.  When plaintiff questioned Edwards about the warehouse inventory, he "yelled" at her and told her that the other workers would do it.  Plaintiff made numerous complaints; however, she could not speak to Warden Rachal until September 10, 2010.  Rachal discussed plaintiff's complaints dating back to November 2009 including her termination from the kitchen job and her numerous complaints against Mr. Edwards. He claimed that he did not receive her mail-tampering complaint.

On the same day that Rachal recorded plaintiff's statement, she was transferred to another prison in Minden, Louisiana; plaintiff claimed that the transfer "further north"[2] was "in retaliation for exercising her rights (First Amendment) for redress of grievances to government..." After a short stay in Minden, she was transferred to her current place of incarceration in Rayville, Louisiana.[3]

As a result of these incidents plaintiff "... has suffered from night bouts of anxiety and lack of sleep due to her dreams and fear of Mr. Edwards trying to set her up and fondle her in her sleep and trying to take advantage of her and no one will help her." Plaintiff also has "... dreamed about

---

[2] Minden is a little over 120 miles west northwest of Tallulah. See http://www.bing.com/maps

[3] Rayville is approximately 36 miles west northwest of Tallulah. *Id.*

the Major and Warden trying to intimidate her and destroy her paperwork."

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and

4

is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's complaint succinctly sets forth her claims and the basis for her cause of action. Each of her claims has been analyzed under these standards and found wanting. She need not be permitted further amendment because her complaints – taken as true for the purposes of this report – fail to state a claim for which relief may be granted.

**2. *Americans With Disabilities Act***

Plaintiff was at some point in time assigned to work in the LTCW kitchen. In connection with this employment, plaintiff, in 2009 received a Culinary Arts/ServSafe Certification. However, on some unspecified date she was terminated from kitchen duties " .... for a medical reason which would not hinder, nor prohibit her from performing any duties in a safe manner with no danger to others..." According to plaintiff, her termination violated the "American Disability Discrimination Acts" (sic). Plaintiff has not described the "medical reason" which resulted in her termination; nor has she alleged how her termination violated the Americans With Disabilities Act (ADA). Nevertheless, the pleadings clearly establish no such violation.

Congress enacted the ADA to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). See

also *Meyers v. Texas*, 410 F.3d 236, 239 (5th Cir.2005). To establish a *prima facie* case for discrimination under the ADA, a plaintiff must show that she is a <u>qualified individual with a disability</u>. *Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir.2001). The term "disability" under the ADA means: "(A) a physical impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A), (B), and (C).

"Major life activities" may include "... caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working..." §12102(2)(A) and "... also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." §12102(2)(B).

Thus, in order to state a claim under the ADA, the plaintiff must show that (1) she is a qualified individual, (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity, and (3) that such exclusion, denial of benefits, or discrimination was by reason of her disability. *See Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir.1997); *Cole v. Velasquez*, 67 Fed. Appx. 252 (5th Cir.2003).

The first step in this process requires the plaintiff to establish that she is disabled and therefore a qualified individual under the Act. *See Lightbourne v. County of El Paso*, 118 F.3d at 428. Plaintiff does not allege any physical impairment that prohibits her from caring for herself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. She

merely complains, in a conclusory fashion, that she was unfairly terminated from her kitchen job on the pretext that she was not medically suitable for the position. Plaintiff clearly does not allege sufficient facts to establish that she is a qualified individual, suffering from a disability, who was discriminated against because of her disability. Her complaint, to the extent that it arises under the ADA, fails to state a claim for which relief may be granted.

### 3. Prison Job

Plaintiff also implies that the loss of her kitchen job was a violation of rights guaranteed under the Due Process Clause of the Fourteenth Amendment. The law in this regards is well established — prisoners do not have any constitutional right to a particular job assignment or to any employment opportunity. *Tighe v. Wall*, 100 F.3d 41, 42-43 (5th Cir.1996) citing *Olim v. Wakinekona*, 461 U.S. 238, 244-45, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983) and *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir.1995); *Oladipupo v. Austin*, 104 F.Supp.2d 626, 638 (W.D.La.2000).

Therefore, plaintiff's claim regarding the loss of her kitchen job and her reassignment is without a basis in law and therefore fails to state a claim for which relief may be granted.

### 4. Harassment

Plaintiff complains that defendant Edwards, her supervisor, subjected her to racial remarks and verbal abuse. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Verbal threats or taunts, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*,

7

713 F.2d 143, 146 (5th Cir.1983). Further, plaintiff's claim that she was the target of profanity and racial and sexual epithets likewise does not state a claim of constitutional dimension. Simply put, allegations of verbal abuse by prison guards simply do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997). These, of course, are troubling allegations; nevertheless, the law does not recognize such claims in this context.

### *5. Excessive Force*

Plaintiff also complains that Edwards "became physical by slapping her on the buttocks." Plaintiff implies a violation of the Eight Amendment. It is unclear from the pleadings how often plaintiff was slapped, nevertheless, it is clear that plaintiff alleged no physical injury as a result of the clearly repugnant contact. In the excessive-force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10, 112 S.Ct. 995 (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis* use of force, <u>such as a slap or a shove, does not implicate constitutional concerns</u>. *Id.*; *Bell v. Wolfish*, 441 U.S. 520 (1979); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997) (bruised ear lasting for three days after guard twisted inmate' ear and held his arm behind his back was *de minimis* and did not state a claim for excessive force); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (inmate who suffered no injury when sprayed with a fire extinguisher was exposed to a *de minimis* use of

force and his claim was properly dismissed as frivolous).

Plaintiff's complaint concerning the physical contact between she and her assailant fails to state a claim for which relief may be granted.

### *5. Retaliation*

Plaintiff claims that her transfer to the Bayou Dorcheat Detention Center in Minden and then her subsequent transfer to her present place of confinement, the Richland Parish Detention Center, Rayville, Louisiana, were in retaliation for her complaints and grievances concerning the loss of her prison job and her complaints concerning the abusive treatment she suffered at the hands of Mr. Edwards. She also implies that her treatment by Edwards – the "yelling" and threats to terminate her employment should she perform any job assignments without first checking with him, and his refusal to assign her manual labor – were acts of retaliation triggered by her complaints concerning his other abusive behavior.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) she exercised a specific constitutional right, (2) the defendant had the intent to retaliate against her for the exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

A civil rights plaintiff must allege more than her personal belief that she is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997). Conclusory allegations of retaliation are insufficient. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events

from which retaliation may plausibly be inferred.' " *Id.* (citation omitted). Causation requires an inmate to show that <u>but for</u> the retaliatory motive the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998).

Plaintiff claims that she was transferred to another prison in retaliation for having filed grievances and complaints. However, that claim is purely conclusory. It is just as likely that she was transferred to remove her from the allegedly toxic environment she constantly complained of. Thus, plaintiff has not shown that she would not have been transferred "but for" a retaliatory motivation. *Woods*, 60 F.3d at 1166.

Of course, retaliation claims under § 1983 are permitted, indeed encouraged, in order to ensure that prisoners are not discouraged from exercising rights guaranteed by our Constitution. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006). Nevertheless, some so-called retaliatory acts, even those clearly motivated by retaliatory intent, are so *de minimis* that they would not deter an ordinary person from further exercise of his rights. *Id.* Such *de minimis* retaliatory acts do not rise to the level of constitutional violations and thus cannot form the basis of a § 1983 claim. *Id.*

Plaintiff identifies two allegedly adverse acts. First, she claims that the defendant Edwards retaliated against her by yelling at her and prohibiting her from doing manual labor and other tasks normally assigned to a worker in her position. Second, she claims that the defendant Rachal transferred her first to Minden and then to Rayville in retaliation for her continued grievances. Clearly, both "adverse acts" are *de minimis* and would be unlikely to, and indeed, did not, discourage plaintiff from exercising her right to complain about conditions of confinement. With regard to her first complaint, it is inconceivable that she was worse off for being forbidden to perform manual labor or other tasks; and, the "yelling" while no doubt unpleasant, was not such an

act that would discourage a reasonable prisoner from pursuing her rights. Second, she complained that she was transferred "further north," however, as noted above, the prison in Minden is only 136 miles from Tallulah, and, plaintiff's present place of confinement is only 36 miles from Tallulah. Clearly, the retaliatory adverse acts alleged herein are *de minimis* as that term is defined in the jurisprudence.[4]

Consequently, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### *6. Interference with Mail*

Finally, plaintiff implies that her mail was intercepted – in fact she claimed "She knows her mail was intercepted and tampered with." Once again, plaintiff alleges conclusory facts. Nevertheless, even if accepted as true, plaintiff fails to state a claim for which relief may be granted whether the claim is analyzed as an access to court claim under the Sixth Amendment, or a freedom of speech claim under the First Amendment because she has not alleged nor demonstrated any prejudice resulting from the alleged acts of interference. *Compare Biliski v. Harborth,* 55 F.3d 160, 162-63 (5th Cir. 1995).

### *7. Prayer for Relief*

Among other things, plaintiff prayed for a declaratory judgment and injunctive relief in the

---

[4] Indeed the retaliatory adverse act identified in *Morris v. Powell*, *supra*, involved that plaintiff's transfer from employment in the prison commissary to the kitchen for a period of one week. While conditions were arguably "unpleasant" when compared to the previous job assignment, the court determined, "Nothing in this sequence of events could support an inference that [plaintiff's] job transfers would have deterred him from the exercise of the right to file grievances. The transfers may have had a retaliatory motive, and [plaintiff] may have experienced discomfort for a few days as a result, but there is no evidence that the job transfers were more than *de minimis*. The standard adopted herein is designed to discourage precisely such claims of inconsequential retaliation." 449 F.3d at 687 (emphasis supplied)

form of an order directing the defendants – Edwards, Rachal, Jenkins, and Cox – to cease and desist from all actions which violated plaintiff's rights under the Constitutions of the United States and the State of Louisiana. As noted, plaintiff is no longer incarcerated at the offending institution and her transfer renders her prayer for prospective declaratory and injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir.2001) (transfer from unit rendered prisoner's claims for declaratory and injunctive relief moot); see also *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir.1991) (same). The possibility that plaintiff may be transferred back to the offending institution "is too speculative to warrant relief." *Herman*, 238 F.3d at 665.

Plaintiff also prayed for compensatory damages; however, the injuries she complained of involved "night bouts of anxiety and lack of sleep due to her dreams and fear of Mr. Edwards ...and... she has also dreamed about the major and warden trying to intimidate her and destroy her paperwork." She claims these dreams started after her traumatizing experiences at the hands of the defendants. Plaintiff has alleged no physical harm from the events complained of. Read liberally, she complains of anxiety and bad dreams.

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff suffered only mental or emotional injury and cannot meet the "physical injury" requirement for a cognizable claim under Section 1997e(e). Plaintiff candidly acknowledged that she was "traumatized" as a result of her confinement under the allegedly unpleasant conditions. However, feelings of fear and anxiety do not qualify as physical injuries under § 1997e(e). *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir.2001). Moreover, even if the Court were to construe plaintiff's pain associated with the slaps to

the buttocks administered by Edwards as physical injuries, such physical injuries, if indeed they existed, were *de minimis* injuries and thus insufficient to meet the "physical injury" requirement of § 1997e(e). *See Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir.2003).

Although § 1997e(e) prohibits plaintiff from recovering compensatory damages, it does not bar her from recovering punitive damages for constitutional violations despite the lack of any physical injury. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir.2007) Nevertheless, "[u]nder § 1983, punitive damages may be awarded only if the official conduct is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994). The actions complained of do not establish evil intent or reckless or callous indifference on the part of any of the named defendants and therefore plaintiff is not entitled to punitive damages.

*Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days**

**following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 29, 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE