UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CARNELLA M. MARKS** | **CIVIL ACTION NO. 11–114** |
| **LA. DOC #300215** | **SECTION P** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **WAYNE EDWARDS, ET AL** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

On January 19, 2011, Plaintiff Carnella M. Marks ("Marks"), acting *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. On April 24, 2011, Magistrate Judge Karen L. Hayes issued a report recommending that Marks' petition be dismissed with prejudice as frivolous and for failing to state a claim upon which relief may be granted.

A copy of this Report and Recommendation was forwarded to Marks at the Richland Parish Detention Center ("RPDC"), the last known place of confinement. The Report and Recommendation was returned to the Clerk of Court on May 9, 2011, marked "RTS/unable to locate."

On June 27, 2011, the Court issued a Ruling [Doc. No. 8] and Judgment [Doc. No. 9] dismissing Marks' civil rights actions for the reasons stated in the Magistrate Judge's Report and Recommendation [Doc. No. 6] and for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Local Rule 41.3W.

On July 25, 2011, the Clerk of Court received from Marks a "Motion by Letter" [Doc. No. 11] which she apparently placed in the prison mailing system on July 22, 2011. In the Motion by Letter, Marks stated that she had been continuously housed at the RPDC since February 15, 2011, but that she did not have any knowledge of the Report and Recommendation until July 1, 2011, when she received a copy of the Court's Ruling and Judgment. She denied that she has violated Local

Rule 41.3W, argued that she had been unable to file any pleadings because of the inadequate law library at the facilities where she has been housed, reiterated her claims against Defendants, requested that the action be "stayed," and, finally, requested that the Court appoint counsel to represent her.

After considering Marks' Motion by Letter, on August 3, 2011, the Court vacated those portions of the June 27, 2011 Ruling [Doc. No. 8] and Judgment [Doc. No. 9] which relied on Marks' failure to prosecute as a basis for the dismissal of her claims. [Doc. Nos. 13 & 14]. The Court's June 27, 2011 Judgment, adopting the Report and Recommendation [Doc. No. 6] of the Magistrate Judge otherwise remained in place. Marks also raised a new access to courts claim based on the inadequacy of the law library of her place of confinement, which the Court fully considered and rejected. [Doc. No. 13, pp. 2-3]. Finally, the Court denied Marks' motion for appointment of counsel and for a stay. [Doc. No. 13, pp. 3-5].

On the same day the Court's Ruling and Judgment issued, August 3, 2011, the United States Court of Appeals for the Fifth Circuit also received correspondence from Marks. Apparently, on the same date Marks sent her Motion by Letter to this Court, she also sent another document with the same title to the Fifth Circuit. However, in it she clearly states that it is "an appeal" from this Court and that she is "objecting to the Report and Recommendation from the Magistrate Judge. That the Judgment and Ruling is Reconsidered, and Plaintiff is granted a "stay[.]" [Doc. No. 15]. The Clerk of Court for the Fifth Circuit returned Plaintiff's other Motion by Letter (hereinafter "notice of appeal") to this Court with instructions that the appeal be docketed using the date it was received by the Fifth Circuit, pursuant to Federal Rule of Appellate Procedure 4(d).

On September 2, 2011, the Court denied Marks' motions to proceed *in forma pauperis* and

for appointment of counsel. [Doc. Nos. 20 & 21].

On September 16, 2011, the Court reviewed Marks' notice of appeal [Doc. No. 15] and determined that it should be construed as a motion for extension of time to appeal, pursuant to Federal Rule Appellate Procedure 4(a)(5). [Doc. No. 22].

On October 4, 2011, the Court issued an Amended Ruling and Judgment [Doc. Nos. 24 & 25], for the sole purpose of clarifying that its August 3, 2011 Ruling and Judgment [Doc. Nos. 13 & 14] addressed Marks' July 25, 2011 "Motion by Letter." [Doc. No. 10], not her July 25, 2011 letter [Doc. No. 11].

That same day, the Clerk of Court received and docketed Marks' Motion for Enlargement of Time to Comply with Ruling [Doc. No. 23]. In that motion, Marks asserted for the first time that she ***never*** received the Magistrate Judge's Report and Recommendation. She moved the Court for an extension of time of thirty (30) days from the date she receives the original Report and Recommendation to file objections.

Because Marks had filed a notice of appeal, however, the Court did not have authority to re-open the case. Accordingly, the Court requested a Rule 60(b) remand from the Fifth Circuit.

The case was remanded by the Fifth Circuit on November 9, 2011 [Doc. No. 27].

On November 10, 2011, the Court issued a Memorandum Order [Doc. No. 28] vacating the Court's June 27, 2011 Ruling and Judgment [Doc. Nos. 8 &9], August 3, 2011 Ruling and Judgment [Doc. Nos. 13 & 14], and October 4, 2011 Amended Ruling and Judgment [Doc. Nos. 24 & 25].[1] The Court also instructed the Clerk of Court to forward another copy of the Magistrate Judge's April

---

[1] Since the Court's Judgment and Amended Judgments were vacated, the Court denied Marks' "Opposition of Judgment and Amended Judgment" [Doc. No. 26] as moot. [Doc. No. 28].

29, 2011 Report and Recommendation [Doc. No. 6] to Marks at the last address she provided: Carnella M. Marks, #300215, Louisiana Correctional Institute for Women, P.O. Box 26, St. Gabriel, LA 70776. Finally, the Court granted Marks' Motion for Enlargement of Time to Comply with Ruling [Doc. No. 23] and extended her deadline for filing objections to the Report and Recommendation to December 15, 2011. The Court informed Marks that, once she filed objections, the Court would consider the entire record before rendering a decision on the Report and Recommendation.

On December 19, 2011, the Clerk of Court received Marks' timely filed twenty-two-page "Opposition to the Courts [sic] Report and Recommendation" ("objections").[2] [Doc. No. 30]. In the objections, Marks responded to the Magistrate Judge's Report and Recommendation, raised new claims, and again moved the Court for appointment of counsel. The Court will address each of these issues.

First, the Court addresses Marks' latest motion for appointment of counsel. The Court previously denied Marks' motions for appointment of counsel in this Court [Doc. Nos. 13 & 14] and on appeal. [Doc. No. 21]. As the Court has now advised Marks on three occasions, in a § 1983 case, Congress has not specifically authorized courts to appoint counsel for a plaintiff. "Generally no right to counsel exists in § 1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. § 1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. The United States Supreme Court in the case of *Mallard*

---

[2] Although Marks' objections were not dated, Marks' cover letter to the Court was dated December 12, 2011, and her mailing was postmarked December 14, 2011, both before the December 15, 2011 filing deadline.

*v. United States District Court for the Southern District*, 109 S. Ct. 1814 (1989), held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not authorized under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." *See Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982); *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989); *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985) ("Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present."). No precise definition of "exceptional circumstances" is available, but the United States Court of Appeal for the Fifth Circuit has provided a litany of factors for lower courts to consider in making this determination. For example, the district court should consider (1) the type and complexity of the case; (2) the plaintiff's ability to adequately present and investigate his case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." *See, Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also, Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf because plaintiffs are not excused from making efforts to procure counsel on their own. *See, Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213.

Plaintiff initiated this action to vindicate her civil rights. She possesses first-hand knowledge of the facts which form the basis of this action. Plaintiff has been able to file documents recounting

the facts and pointing out her legal arguments to the Court. While there were some issues with Plaintiff's receipt of notice from the Court, she articulated those issues sufficiently, so that this Court requested a remand of the case from the Fifth Circuit and then vacated its Judgment to allow her time to file her objections. The Court has considered Plaintiff's unsuccessful efforts to procure counsel on her behalf, but does not find this case so exceptional to justify appointment of counsel. Applying the relevant factors and the record in this case, Plaintiff's motion for appointment of counsel contained in her objections is DENIED.

Next, the Court has considered Marks' objections to the analysis contained in the Magistrate Judge's Report and Recommendation. To the extent that Marks raises objections to the Magistrate Judge's Report and Recommendation on her claims of racial and sexual harassment, excessive force, a violation of the Due Process Clause, and interference with mail, the Court agrees with and ADOPTS the analysis of the Magistrate Judge, and these claims are DISMISSED WITH PREJUDICE.

Additionally, the Court agrees with and ADOPTS the Magistrate Judge's analysis of Marks' request for injunctive and declaratory relief and compensatory and punitive damages. Marks' prayer for these types of relief is without merit, and she will not be able to recover the requested relief.

However, Marks has provided additional facts and argument with regard to her claim of disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–13, as amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 3000e, *et seq*. Marks states that she has a culinary arts degree and that when she arrived at Louisiana Transitional Center for Women ("LTCW") in Tallulah, Louisiana, she was immediately assigned to

work in the kitchen. She was later removed from her position in the kitchen for the alleged reason that her medical history indicated that she was previously diagnosed with Hepatitis C. Marks admits that it is true that she had a previous diagnosis of Hepatitis C, but contends that LTCW did not test her for Hepatitis as part of its initial health screening. She has since been tested (although it is not clear when and where she was tested), and she has been told that she does not have Hepatitis C. Even if she had Hepatitis C, Marks contends that there were "numerous inmates working the kitchen area at [LTCW] with Hepatitis[]C and with HIV, and those individuals were not removed from the kitchen." [Doc. No. 30].

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to establish a cause of action under Title II of the ADA, a plaintiff must establish (1) that she is a qualified individual within the meaning of the ADA; (2) that she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination is by reason of her disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

In the Report and Recommendation, the Magistrate Judge addressed Marks' ADA claim, but found that she failed to show that she was a "qualified individual" based on an actual disability, i.e., that she had a physical impairment that substantially limits one or more of her major life activities. The Report and Recommendation did not address the two other ways a plaintiff may prove that she is a qualified individual with a disability. Under the ADAAA, effective January 1, 2009, Congress

maintained the three-pronged definition of disability: a disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." In this instance, Marks is not alleging that she had a physical impairment that actually rendered her disabled. To the contrary, she alleges that Defendants regarded her as disabled because they believed that she had Hepatitis C. To show that she was a qualified individual based on these allegations, Marks need only show that she was subjected to an action prohibited by the statute. ADAAA, Sec. 6 § 501(l)(h), 122 Stat. 3553, 3558. Based on her allegations, Marks may have been "regarded as" disabled by Defendants.

Even if Defendants did regard her as disabled, however, Marks cannot survive an initial frivolity review on her ADA claim because she cannot meet her other required showings under Title II. She does not contend that she was removed from her kitchen position because Defendants regarded her as having Hepatitis C, and she admits that other prisoners with Hepatitis C were allowed to work in the kitchen. *See* [Doc. No. 30, p. 4 ("[I]f she was in fact dismissed based on her illness she would have fallen under the [ADA,]" but "there were numerous inmates working in the kitchen area . . . with Hepatitis[]C and with HIV . . . This action was merely retaliatory.")]. Marks cannot show that she was denied a benefit **because** she was regarded as disabled. Thus, Marks' ADA claim fails, and that claim is also DISMISSED WITH PREJUDICE.

After Marks was removed from her position in the kitchen, she was reassigned to the warehouse, where her supervisor, Wayne Edwards ("Edwards"), allegedly harassed her both racially and sexually. Marks alleges, though, even prior to her reassignment, Edwards was able to "retaliate" against her by having her removed from her position in the kitchen. The test for a

8

retaliation claim under 42 U.S.C. § 1983 is correctly set forth in the Report and Recommendation, and the Court ADOPTS the Magistrate Judge's statement of the law, as well as her analysis of Marks' retaliation claims based on other acts. With regard to this claim against Edwards, Marks has not stated any facts to show that she exercised a specific constitutional right prior to her reassignment or that Edwards intended to retaliate against her for the exercise of that right. Importantly, Marks is asserting a retaliation claim against Edwards based on an act that took place **before** she was assigned to the warehouse (and placed under his supervision) and **before** she filed a grievance. The Court also finds that, as with the other alleged retaliatory acts she asserts, Marks' reassignment to the warehouse was inconsequential. The Court finds that Marks' retaliation claim also fails as a matter of law and is DISMISSED WITH PREJUDICE.

Finally, Marks has alleged more facts in support of her interference with mail claim. The Court agrees with and ADOPTS the analysis of the Magistrate Judge on this claim. Though Marks has added to her claim, she still has suffered no prejudice, given the actions taken by this Court and the Fifth Circuit. Accordingly, Marks' interference with mail claim is also DISMISSED WITH PREJUDICE.

Accordingly, for the reasons stated in this Ruling, together with the reasons stated in the Magistrate Judge's Report and Recommendation [Doc. No. 6], to the extent adopted, the Court finds that Marks' civil rights action should be DISMISSED WITH PREJUDICE as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915 (d)(2)(B)(I) and (ii).

MONROE, LOUISIANA, this 23rd day of January, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE